**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL A. BROWN | ) | CASE NO. |
| 101 Lisbon St. | ) | |
| Canfield, Ohio 44406 | ) | JUDGE: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| AS AMERICA, INC. | ) | |
| d/b/a AMERICAN STANDARD BRANDS | ) | **JURY DEMAND ENDORSED** |
| 605 S. Ellsworth Ave. | ) | **HEREIN** |
| Salem, Ohio 44460 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| | ) | |
| AS AMERICA, INC. | ) | |
| D/B/A/ AMERICAN STANDARD | ) | |
| BRANDS | ) | |
| Statutory Agent | ) | |
| 1 Centennial Avenue | ) | |
| Piscataway, NJ  08854 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| PAUL LEE | ) | |
| AS AMERICA, INC. | ) | |
| d/b/a AMERICAN STANDARD BRANDS | ) | |
| 605 S. Ellsworth Ave. | ) | |
| Salem, Ohio 44460 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| JASON SCHNABL | ) | |
| AS AMERICA, INC. | ) | |
| d/b/a AMERICAN STANDARD BRANDS | ) | |
| 605 S. Ellsworth Ave. | ) | |
| Salem, Ohio 44460 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| | ) | |

JASON SCHNABL          )
4370 Yakata Dora Dr.       )
Youngstown, Ohio 44511   )
                                  )
            Defendants.     )

Plaintiff, Michael Brown, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

## **PARTIES**

1.    Brown is a resident of the city of Canfield, Mahoning County, Ohio.

2.    At all times herein, Brown was acting in the course and scope of his employment.

3.    American Standard Brands is a domestic corporation that does business at 605 S. Ellsworth Ave., Salem, Ohio, in Columbiana County.

4.    American Standard Brands is and, at all times hereinafter mentioned, was an employer within the meaning of R.C. 4112.01 et seq.

5.    American Standard Brands is and, at all times hereinafter mentioned, was an employer within the meaning of 42 U.S.C. § 2000e et seq.

6.    American Standard Brands is and, at all times hereinafter mentioned, was an employer within the meaning of 42 U.S.C. § 12101 et seq.

7.    Paul Lee is a resident of the state of Ohio, upon information and belief.

8.    Lee was, at all times hereinafter mentioned, an individual who was a manager and/or supervisor at American Standard Brands who acted directly or indirectly in the interest of American Standard Brands.

9.    American Standard Brands employed Lee in the position of Plant Manager.

10.    Jason Schnabl is a resident of the state of Ohio, upon information and belief.

11.    Schnabl was, at all times hereinafter mentioned, an individual who was a manager and/or supervisor at American Standard Brands who acted directly or indirectly in the interest of American Standard Brands.

12.    American Standard Brands employed Schnabl in the position of Senior Manager of Human Resources.

13.    Schnabl was, at all times hereinafter mentioned, an employer within the meaning of R.C. 4112.01 et seq.

14.    Schnabl made, and/or participated in, the adverse actions asserted, herein.

## JURISDICTION & VENUE

15.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Brown is alleging a Federal Law Claim under the Civil Rights Act of 1964, 28 U.S.C. § 2000e et seq. ("Title VII") and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA").

16.    All material events alleged in this Complaint occurred in Mahoning County, Ohio.

17.    This Court has supplemental jurisdiction over Brown's state law claims pursuant to 28 U.S.C. § 1367 as Brown's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

18.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

19.    Within 300 days of the conduct alleged below, Brown filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2020-00154 ("Brown's EEOC Charge").

20.     On or about November 18, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to Brown regarding the Brown EEOC Charge.

21.     Brown received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e(5)(f)(1), which is attached hereto as Plaintiff's Exhibit A.

22.     Brown has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

23.     Brown has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

### A. Background

24.     Brown is a current employee of American Standard.

25.     Brown is currently off work on extended disability leave.

26.     In or around October 2015, Brown began working for American Standard.

27.     American Standard employed Brown in the position of a Work Group Manager, Metal Department.

28.     Brown was an exemplary employee with no history of meaningful discipline.

29.     Brown was dedicated, diligent and hard-working and proved himself to be a competent and reliable employee who successfully performed the demanding duties of his job.

### B. Brown's Disability

30.     Brown suffers from Graves' Disease. ("Disability").

31.     Brown's Disability affects his immune body systems.

32.     Brown's Disability substantially impaired one or more of his major life activities including working.

33.     Brown's Disability is a physical impairment.

34.     Brown's Disability is a disease.

35.     Brown's Grave's Disease is a disability.

36.     As a result of Brown's Graves' Disease, Brown is and was considered disabled within the meaning of R.C. 4112.01 et seq.

### C.  American Standard Approves Brown's FMLA For His Disability And The Plant Manager Tells Brown That His Absences Are Still Viewed As A Black Mark Against His Attendance Record

37.     Because of Brown's Graves' Disease, Brown required time off work to deal with the diseases' debilitating side effects including tremors, fatigue, and heart palpitations. ("Intermittent Absences Due To Disability").

38.     Due to Brown's Intermittent Absences Due to Disability, initially, Brown incurred absences that counted against his attendance record.

39.     As a result of Brown's Intermittent Absences Due To Disability, in or around 2017 Brown requested Family Medical Leave ("FMLA") to cover intermittent and future absences related to his Disability.  ("FMLA Leave Request" or "FMLA Leave").

40.     American Standard received and approved Brown's FMLA Leave Request.

41.     As a result of Brown's FMLA Leave Request, American Standard was aware of Brown's disability.

42.     As a result of Brown's FMLA Leave Request, American Standard had notice of Brown's disability.

43.     As a result of Brown's FMLA Leave Request, American Standard had a record of Brown's disability.

44.     As a result of Brown's FMLA Leave Request, Defendants perceived Brown as being disabled.

45.     Alternatively, as a result of Brown's FMLA Leave Request, Defendants perceived Brown as having one or more physical and/or mental impairments.

46.     Alternatively, as a result of Brown's FMLA Leave Request, Defendants perceived Brown as being substantially limited by one or more physical and/or mental impairments.

47.     Alternatively, as a result of Brown's FMLA Leave Request, Defendants regarded Brown as being disabled.

48.     During the following years after Brown's FMLA Leave Request, Brown continually met the FMLA 1,250 work hour requirement because Brown worked 3,000 hours in addition to using intermittent FMLA Leave.

49.     In or around 2019, Paul Lee, Plant Manager, told Brown that he "needed to be at the plant every day."  ("You Need To Be At The Plant Everyday Comment").

50.     Brown explained to Lee that he was always at work and was only off intermittently on FMLA Leave because of his Disability.

51.     Lee was on notice that Brown's absences were covered by the FMLA.

52.     Lee knew that Brown's absences were related to his disability.

53.     Lee had a record that Browns was approved for FMLA Leave.

54.     On multiple occasions after Lee used FMLA Leave to cover an absence for his Disability, Lee repeated the You Need To Be At The Plant Everyday Comment."

55.     Lee also told Brown that his intermittent absences were not ideal and were viewed by American Standard as a "black mark" or "strike on his record."  ("Your Absences Are Viewed As A Black Mark Comment").

56. Brown believed that Lee's Your Absences Are Viewed As A Black Mark Comment were made to discourage his continued use of FMLA.

57. A person in Brown's position would have believed that Lee's Your Absences Are Viewed As A Black Mark Comment were made to discourage Brown's continued use of FMLA.

58. Lee continued making unlawful and harassing comments to Brown similar to his Your Absences Are Viewed As A Black Mark Comment.

**D.  Brown Successfully Performs Duties And Responsibilities Of Vacant Process Manager Job For Six Months**

59. In or around 2017, the position of Process Manager became vacant. ("Process Manager Position.")

60. Brown expressed an interest in filling the Process Manager Position.

61. As a result of expressing interest in filling the Process Manager Position, Brown was permitted to fill the Process Manager Position.

62. While filling the Process Manager Position, Brown successfully performed all the duties and requirements of the position.

63. While filling the Process Manager Position, Brown did not receive the increased compensation allotted for the Process Manager Position.

64. Brown successfully performed all the duties and requirements of the Process Manager Position for approximately six months.

65. American Standard praised Brown's performance in the Process Manager Position while Brown occupied the position.

**E.  Brown Expresses Interest In Filling The Process Manager Position**

66. Brown informed Senior Manager of Human Resources, Jason Schnabl, that he wanted to be considered to fill the position of the Process manager Position.  ("Consideration Request").

67. In Brown's Consideration Request, Brown inquired of Schnabl as to whether his four-year apprenticeship certificates fulfilled the position's degree requirement.

68. In response to Brown's Consideration Request, Schnabl indicated that Brown's four vocational degrees could be considered as equivalents to a college/university degree. ("Vocational Degrees").

69. In addition to Brown's Vocational Degrees, Brown was attending college and nearing the completion of his four-year degree.

70. In 2017, when the Process Manager Position was posted, Brown submitted his resume in consideration for the job.  ("Application Process").

### F.  Brown Discloses To Schnabl That His Disability Has Worsened, American Standard Denies Brown The Process Manager Position

71. During the Application Process, Brown's Disability worsened.

72. During the Application Process, Brown shared with Schnabl that his Disability had recently worsened and become unregulated.  ("Disclosure to Schnabl").

73. After Brown's Disclosure to Schnabl, American Standard no longer considered Brown as a viable applicant.

74. After Brown's Disclosure to Schnabl, American Standard no longer considered Brown as a viable candidate for the Process Manager Position.

75. After Brown's Disclosure to Schnabl, American Standard selected an external applicant who did not have a known disability.

76. Brown was a qualified individual who could perform the essential functions of the Process Manager Position with or without reasonable accommodations.

77. Alternatively, Brown was a qualified individual who was actively performing and fulfilling the duties and requirements of the Process Manager Position with or without reasonable accommodations.

78. Alternatively, Brown had been actively performing and fulfilling the duties and requirements of the Process Manager Position for approximately six months.

79. Alternatively, while Brown actively performed and fulfilled the duties of the Process Manager Position, American Standard relied upon and benefitted from Brown's successful performance in the Process Manager Position.

80. Alternatively, Brown was selected to fill the vacant Process Manager Position for six months because he was qualified for the Process Manager Position and performed the essential functions of the position with or without reasonable accommodations.

81. American Standard did not select Brown for the Process Manager Position because of Brown's disability.

82. American Standards' non-selection of Brown on the basis of his disability is disability discrimination.

83. American Standard intentionally discriminated against Brown on the basis of his disability.

84. American Standard willingly discriminated against Brown on the basis of his disability.

85. American Standard knowingly discriminated against Brown on the basis of his disability.

86. Alternatively, American Standards' not selecting Brown for the Process Manager Position.

87. Alternatively, American Standard did not select Brown for the Process Manager Position because of Brown's absences resulting from Brown's disability.

88.   Alternatively, American Standards' non-selection of Brown for the Process Manager Position on the basis of Brown's absences resulting from Brown's disability was disability discrimination.

89.   Alternatively, American Standard intentionally did not select Brown because of absences that resulted from Brown's disability.

90.   Alternatively, American Standard willingly did not select Brown because of absences that resulted from Brown's disability.

91.   Alternatively, American Standard willingly did not select Brown because of absences that resulted from Brown's disability.

**G.  American Standard Threatens Brown With Employment Termination Because of Absences Related To Brown's Disability**

92.   In or around 2018, American Standard threatened Brown with termination because he was intermittently off work treating his Disability.  ("Threats of Termination").

93.   Brown's work hours for the year were well over 2,500 hours because Brown worked extra hours to make up for missed time that he was off work treating his Disability.

94.   Alternatively, American Standard permitted Brown to work extra hours to "make up" the time Brown missed while he was off treating his Disability.

95.   Alternatively, Brown did not have to "make up" the time Brown missed while he was off treating his Disability because FMLA did not require an employee to "make up" missed time.

96.   American Standard continually forced Brown to fight for his job by requiring him to explain his disability related absences.  ("Explanation For Absences").

97.   In response to American Standard's Explanation For Absences, Brown explained that all his absences were related to his Disability.

### H. <u>American Standard Denies Brown The Process Manager Position For A Second Time</u>

98.  In or around April 2019, the successful candidate hired for the Process Manager Position resigned and the position became vacant again.  ("Process Manager Position No. 2").

99.  American Standard placed the position up for bid and began taking applications to fill the Process Manager Position No. 2.

100.  Brown submitted his application and resume for the Process Manager Position No. 2.

101.  Brown was a qualified individual who could perform the essential functions of the Process Manager Position No. 2 with or without reasonable accommodations.

102.  American Standard selected Brown to interview for the Process Manager Position No.2.

103.  American Standard selected an external candidate without a known disability as the successful candidate for the Process manager Position No. 2.

104.  American Standard did not select Brown as the successful candidate for the Process Manager Position No. 2.

105.  American Standard had neither hired Brown for the Process Manager Position nor the Process Manager Position No. 2.

106.  American Standard did not select Brown as the successful candidate for the Process Manager Position No. 2 because of Brown's Disability.

107.  Alternatively, American Standard did not select Brown as the successful candidate for the Process Manager Position No. 2 because of Brown's absences resulting from his Disability.

108.  American Standard did not select Brown for the Process Manager Position No. 2 because of Brown's disability.

109.  American Standards' non-selection of Brown for the Process Manager Position No. 2 on the basis of his disability is disability discrimination.

110. American Standard intentionally discriminated against Brown on the basis of his disability.

111. American Standard willingly discriminated against Brown on the basis of his disability.

112. American Standard knowingly discriminated against Brown on the basis of his disability.

113. Alternatively, American Standard did not select Brown for the Process Manager Position No. 2 because of Brown's absences resulting from Brown's disability.

114. Alternatively, American Standards' non-selection of Brown for the Process Manager Position No. 2 on the basis of Brown's absences resulting from Brown's disability were disability discrimination.

115. Alternatively, American Standard intentionally did not select Brown for the Process Manager Position No. 2 because of absences that resulted from Brown's disability.

116. Alternatively, American Standard willingly did not select Brown for the Process Manager No. 2 because of absences that resulted from Brown's disability.

117. Alternatively, American Standard willingly did not select Brown for the Process Manager No. 2 because of absences that resulted from Brown's disability.

**COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. 4112.01 ET SEQ.**

118. Brown restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

119. Defendants were aware that Brown suffered from an actual disability and/or physical impairment.

120. Alternatively, Defendants perceived Brown to suffer from a disability or physical impairment.

121. Alternatively, Defendants had a record that Brown suffered from a disability or physical impairment.

122.   Alternatively, Defendants regarded Brown as an individual who suffered from a disability or physical impairment.

123.   Defendants refused to hire Brown for the Process Manager Position because of his actual disability and/or physical impairment.

124.   Defendants refused to hire Brown for the Process Manager Position No. 2 because of his actual disability and/or physical impairment.

125.   Alternatively, Defendants hired an external applicant for the Process Manager Position because of the applicant's lack of actual disability and/or physical impairment.

126.   Alternatively, Defendants hired an external applicant for the Process Manager Position No. 2 because of the applicant's lack of actual disability and/or physical impairment.

127.   Defendants' conduct was in violation of violated R.C. 4112.01 et seq.

128.   As a direct and proximate result of Defendants' conduct, Brown suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 ET SEQ.

129.   Brown restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

130.   Defendants treated Brown differently than other similarly situated applicants based on his disabling condition.

131.   Defendants treated Brown differently than other similarly situated applicants based on his perceived disabling condition.

132.   Defendants violated the Americans with Disabilities Act when it refused to hire Brown for the Process Manager Position on the basis of Brown's Disability.

13

133. Defendants violated the Americans with Disabilities Act when they refused to hire Brown for the Process Manager Position No. 2 on the basis of Brown's Disability.

134. Defendants violated the Americans with Disabilities Act when hired other applicants because they had no known disabilities.

135. As a direct and proximate result of Defendant's conduct, Brown suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: RETALIATION IN VIOLATION OF R.C. 4112.02(I)

136. Brown restates each and every prior paragraph of this Complaint as if it were fully restated herein.

137. Pursuant to R.C. 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

138. Brown suffered emotional distress as a result of Defendants' conduct and is entitled to emotional distress damages pursuant to R.C. 4112.01 et seq.

139. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Brown, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

140. Brown restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

141. Defendants intended to cause Brown emotional distress or knew that their acts or omissions would result in serious emotional distress to Brown.

14

142.   Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

143.   As a direct and proximate result of Defendants' acts and omissions as set forth above, Brown has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

144.   As a direct and proximate result of Defendants' conduct and the resulting emotional distress, Brown has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Brown demands from Defendants the following:

a)   Issue an order requiring Defendants to restore Brown to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

b)   An award against each Defendant of compensatory and monetary damages to compensate Brown for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

c)   An award of punitive damages against each Defendant in an amount in excess of $25,000;

d)   An award of reasonable attorneys' fees and non-taxable costs for Brown's claims as allowable under law;

e)   An award of the taxable costs of this action; and

f)   An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,


/s/ Brian D. Spitz
Brian D. Spitz (0068816)
Sean P. Costello (0068612)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com
          sean.costello@spitzlawfirm.com


*Attorneys for Plaintiff Michael A. Brown*

## JURY DEMAND

Plaintiff Michael A. Brown demands a trial by jury by the maximum number of jurors permitted.

/s/ Brian D. Spitz

Brian D. Spitz (0068816)
Sean P. Costello (0068612)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:  (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com
        sean.costello@spitzlawfirm.com

*Attorney for Plaintiff Michael A. Brown*